**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

PUEBLO OF SANTA CLARA AND PUEBLO OF ZIA,
federally recognized Indian tribes

Plaintiffs,

v. Civil Action No. 1:26-cv-03593-KWR-JMR

NATIONAL PARK SERVICE,
JESSICA BOWRON, Acting Director of the National Park Service,
MARTIN TRAYLOR, Acting Regional Director of the National Park Service Intermountain Region, and
JORGE SILVA-BAÑUELOS, Superintendent of the Valles Caldera National Preserves, all of whom are sued in their official capacities,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PUEBLO OF SANTA CLARA AND PUEBLO OF ZIA'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

**THIS MATTER** comes before the Court on the Pueblo of Santa Clara and the Pueblo of Zia's Emergency Motion for a Temporary Restraining Order **(Doc. 2)**.

Having reviewed the Plaintiffs' Motion, Complaint **(Doc. 1)**, and relevant law, the Court finds that Plaintiffs' Motion is well-taken and, therefore, are **GRANTED**.

## BACKGROUND[1]

As alleged in the Complaint, this case arises from the National Park Service's ("NPS") recent issuance of a special use permit ("SUP") to Jemez Pueblo. **Compl. ¶¶ 35–36**. The permit

[1] Plaintiffs' Complaint details an ongoing saga of eagle taking dating back to October 2023. The Court has omitted these details from the Order for they are not consequential to the matter at hand. This Section focuses narrowly on the facts essential to the disposition.

allows the Pueblo to take—that is, to kill—one golden or bald eagle within Valles Caldera National Preserve. ***Id.* Ex. 1 at 2.** Golden eagle taking begins October 28, 2026, and lasts until November 27. ***Id***. A bald eagle may be taken from November 1 to November 27. ***Id***.

The NPS derives its authority to issue permits of this nature from 16 U.S.C. § 698v-11, which designated Valles Caldera as a unit of the National Park System in 2014. ***Id.* ¶¶ 14, 36**. The purpose of the enabling legislation that placed Valles Caldera under NPS' authority is to "protect, preserve, and restore the fish, wildlife, watershed, natural, scientific, scenic, geologic, historic, cultural, archaeological, and recreational values of the . . . Valles Caldera National Preserve." ***Id.* ¶ 15** (quoting 16 U.S.C. § 698v-11(b)(1)).

The NPS permit exists contemporaneously to a permit from the U.S. Fish and Wildlife Service ("USFWS"), which allows Jemez Pueblo to take up to eight golden or bald eagles from within Los Alamos, Rio Arriba, Sandoval, San Miguel, and Santa Fe counties. **Pls.' Mot. TRO, Ex. 1 at 4–5, Doc. 2**.[2] Valles Caldera—part of Sandoval County—is encompassed by this area. Because Valles Caldera is under the authority of NPS, the USFWS permit alone does not give Jemez Pueblo authority to take eagles from Valles Caldera. ***Id.* ¶¶ 14–20**.

After the NPS issued the SUP to Jemez Pueblo, Plaintiffs, Pueblo of Santa Clara and Pueblo of Zia, filed a Complaint and submitted this Motion, asking the Court to temporarily enjoin the permit through a Temporary Restraining Order ("TRO"). The Complaint alleges that the permit violates the Religious Freedom and Restoration Act ("RFRA"), the Administrative Procedure Act ("APA") and the National Environmental Policy Act ("NEPA"). **Compl. ¶¶ 43–81**.

---

[2] Under the USFWS permit, Golden eagles may be taken from August 16, 2026, to February 28, 2027. Bald eagles may be taken from November 1 to February 28. **Pls.' Mot. TRO, Ex. 1 at 5, Doc. 2**.

As relevant to this Order, Plaintiffs' Motion argues that the NPS permit violates their rights under RFRA. **Doc. 2 at 9**. That's because, as alleged in the Complaint, golden and bald eagles are sacred creatures to the Santa Clara and Zia people. **Compl. ¶¶ 45–46**. And they are integral to the sacredness of the Valles Caldera, as well as to the Plaintiffs' ability to exercise their religions. ***Id.*** According to Plaintiffs, the taking of even one bald or golden eagle from Valles Caldera substantially burdens the exercise of their sincerely held religious beliefs while a least restrictive alternative to achieve the government's compelling interest is available. **Doc. 2 at 9–15**.

**LEGAL STANDARD**

Like a preliminary injunction, a TRO will not be granted unless the movant shows that: (1) the movant has a substantial likelihood of prevailing on the merits; (2) the movant will suffer irreparable injury unless the injunction or restraining order is issued; (3) the threatened injury outweighs the harm the injunction or restraining order might cause the adverse party; and (4) the injunction or restraining order, if issued, would not be adverse to the public interest. *See Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016); *McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1253 (D.N.M. 2003). A movant is not able to show the existence of an irreparable injury if he has an adequate remedy at law to address the alleged harm. *See Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353 (10th Cir. 1989).

Any right to relief must be clear and unequivocal. *See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)). A TRO is appropriate when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

## DISCUSSION

In order for the Court to grant Plaintiffs' Motion for a TRO, Plaintiffs must show that: (1) Plaintiffs have a substantial likelihood of prevailing on the merits; (2) Plaintiffs will suffer irreparable injury unless the injunction or restraining order is issued; (3) the threatened injury outweighs the harm the injunction or restraining order might cause the adverse party; and (4) the injunction or restraining order, if issued, would not be adverse to the public interest. *See Diné Citizens*, 839 F.3d at 1281. The Court will address each of these elements in turn, relying upon the Complaint and Plaintiffs' Motion.

### A. Likelihood of Success on the Merits

Plaintiffs bring their Complaint under RFRA, the APA and NEPA. ***See* Compl. ¶¶ 43–81** Plaintiffs' Motion addresses the likelihood of success on the merits under RFRA and the APA. ***See* Doc. 2 at 9–19**. However, because Plaintiffs have shown likelihood of success on the merits with respect to their RFRA claim, the Court need not consider the likelihood of Plaintiffs' success under the APA.

RFRA prohibits the federal government from substantially burdening any person's religious exercise without demonstrating that the burden is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000b-1; *Tanzin v. Tanvir*, 592 U.S. 43 (2020). "[O]rganizations, including corporations, companies, [and] associations" are defined as persons under RFRA. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014). A RFRA claimant must first assert a *prima facie* case by showing that a government action substantially burdens the exercise of her sincere religious belief. *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 428 (2006); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1137 (10th Cir. 2013) ("Our only task is to determine whether the claimant's belief is sincere, and if so,

whether the government has applies substantial pressure on the claimant's belief to violate that belief.").

A sincerely held religious belief is rooted in a claimant's particular religious practice, which need not be "acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. Of Ind. Empl. Sec. Div.*, 450 U.S. 707, 716 (1981). Courts defer to a RFRA claimant's statement of belief, so long as that belief is sincerely held. *Burwell*, 573 U.S. at 725 ("[I]t is not for [the Court] to say that their religious beliefs are mistaken or insubstantial. Instead, [the Court's] narrow function in this context is to determine whether the line drawn reflects an honest conviction.") (quotations and internal citations omitted). And a government imposes a substantial burden on religious exercise if it prevents participation in conduct motivated by a sincerely held religious belief. *Sebelius*, 723 F.3d at 1138; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010).

Once a claimant has established a *prima facie* RFRA claim, the burden shifts to the government to demonstrate that the burden on the claimant is the least restrictive means of advancing a compelling government interest. *Gonzales*, 546 U.S. at 428. In considering the government's interest, the Court must look past "broadly formulated interests justifying the general applicability of government mandates and scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 431. And while the government does not have to "refute every conceivable option in order to satisfy the least restrictive means prong of RFRA," *United states v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011), it must at least consider "the alternative regulation schemes proffered by the parties, and supported in the record." This requirement is meant to ensure that "none of the proffered alternative schemes would be less restrictive while still satisfactorily advancing the compelling governmental interests." *Id.*

Here, Plaintiffs have demonstrated that they are likely to succeed on the merits. Plaintiffs' religious exercise is substantially burdened by the taking of even one golden or bald eagle from Valles Caldera. And there is a less restrictive means available to the government—permitting Jemez Pueblo to take golden and bald eagles from every location open to them under the USFWS eagle take for Indian religious practices permit except for Valles Caldera.

First, the taking of eagles from Valles Caldera substantially burdens Plaintiffs' sincerely held religious beliefs because it prevents Plaintiffs from participating in their religious practices. *See Sebelius*, 723 F.3d at 1138; *Abdulhaseeb*, 600 F.3d at 1315. The Plaintiffs sincerely believe that golden and bald eagles are sacred creatures integral to their religious practice. **Compl. ¶¶ 45–46, Ex. 2 (Pls.' Aff.)** (attesting, implicitly, to the importance of eagles to the Zia Pueblo), **Ex. 3 (Pls.' Aff.)** (attesting, implicitly, to the importance of eagles to the Santa Clara Pueblo). According to Plaintiffs' religious beliefs, these eagles must be preserved and protected, in part because their presence contributes to the sacredness of sites within Valles Caldera. ***Id***. Taking even one eagle from the Caldera undermines the sacredness of the Caldera and it prevents Plaintiffs from participating in religious practices that involve access to live eagles in the Caldera. **Doc. 2 at 11**.

The Tenth Circuit has already endorsed this view of a substantial burden within the context of eagle feathers. In *United States v. Hardman*, the Court found that because "[t]he eagle feather is sacred in [claimants' religions] . . . [a]ny scheme that limits their access to eagle feathers therefore must be seen as having a substantial effect on the exercise of religion." 297 F.3d 1116, 1126–27 (10th Cir. 2002). Similarly, here, Plaintiffs' exercise of their religious beliefs requires access to unharmed eagles and so harming even one substantially burdens their religious exercise.

Second, the record indicates that the least restrictive means available to the government is to allow Jemez Pueblo to take golden and bald eagles from the other locations open to them under

the USFWS permit, excluding the Valles Caldera. Just like the preservation of eagles is core to Plaintiffs' religious practices, eagle taking is core to Jemez Pueblo's religious exercise. **Compl. Ex. 1 at 2**. Therefore, the government has a compelling interest in permitting Jemez Pueblo to take eagles, lest it substantially burden its religious exercise. ***See also*** **Doc. 2 at 13** (indicating Plaintiffs do not dispute the government has a compelling interest "in allowing Jemez to obtain bald or golden eagles for religious practices). When a court is faced with a conflict between the government's compelling interest and a sincerely held religious belief, it is instructed by the Tenth Circuit to determine whether the government's action properly balances the interests and whether an alternative scheme proffered by the parties and supported by the record would also balance the interests, but do so in a less burdensome manner. *Wilgus*, 638 F.3d at 1289–90.

Here, the NPS permit balances the government's interest in allowing the Jemez Pueblo to take eagles with Plaintiffs' interest in preserving eagles by limiting the number of eagles Jemez Pueblo can take to one. **Compl. Ex. 1 at 2**. However, on this record, that is not the least burdensome way of balancing these competing interests. The least burdensome way of balancing the interests is to prevent Jemez Pueblo from taking any eagles from Valles Caldera. That's because the government's compelling interest is satisfied by allowing Jemez Pueblo to take eagles from every other location open to them under the USFWS permit. While taking eagles is a core religious practice for Jemez Pueblo, nothing in the record suggests that this practice must be exercised within Valles Caldera. The record indicates Valles Caldera is spiritually and ceremonially important to Jemez Pueblo. *See* **Doc. 2 at 10** (acknowledging Valles Caldera has spiritual and ceremonial importance to 37 American Indian tribes, which includes Jemez Pueblo). It also shows that certain sites within Valles Caldera are "recognized as having cultural significance to Jemez." **Compl. Ex.**

**1 at 2**. But nowhere does it say that Jemez Pueblo's exercise of religious freedom will be burdened if it cannot hunt eagles within Valles Caldera.

Accordingly, there is an alternative, less restrictive means to achieve the government's interest, and Plaintiffs have demonstrated likelihood of success on the merits with respect to their RFRA claim.

**B. Irreparable Injury**

To satisfy the irreparable injury requirement, Plaintiffs must show "a significant risk that [they] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (citation omitted). Plaintiffs must also demonstrate that the harm "is likely to occur before the district court rules on the merits." *RoDa Drilling Co.*, 552 F.3d at 1210 (citation omitted). Plaintiffs have clearly shown that both conditions are satisfied.

First, when the injury is to one's religion, "an effective monetary remedy . . . [is] inadequate or difficult to ascertain." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Here, where the killing of even one eagle would substantially burden Plaintiffs' religious exercise, no monetary remedy exists that would compensate them after the fact because such an injury cuts to the core of their religions.

Second, if the Court were not to issue a TRO, Jemez Pueblo could take an eagle as early as tomorrow, October 28—well before the Court has opportunity to consider the merits of Plaintiffs' case with the advantage of full briefing from both parties.

Accordingly, Plaintiffs have demonstrated that the TRO is necessary to prevent them from suffering irreparable harm.

### C. Balance of Equities

The balance of equities weighs in favor of issuing the TRO, which only preserves the status quo for a short time. The NPS permit allows Jemez Pueblo to take eagles from Valles Caldera until November 27, 2026. **Compl. Ex. 1 at 2**. Should the United States prevail at the preliminary injunction hearing, which must be set within two weeks of this Order's issuance, Jemez Pueblo will have more than two weeks to take eagles from Valles Caldera. The record suggests this is enough time for the Pueblo to successfully take an eagle from Valles Caldera. ***See*** **Compl. ¶¶ 18, 20–21** (indicating Jemez Pueblo was able to take "numerous" eagles within Valles Caldera when the NPS issued it a taking permit for October 13, 2023 to November 12, 2023). Conversely, if the Court denies Plaintiffs' Motion, irreparable injury is very likely to occur well before a court has an opportunity to hear the merits of this case. Accordingly, the balance of equities favors issuing a TRO.

### D. Public Interest

Finally, a TRO is in the public's interest. Whenever a party demonstrates "a likely violation of their RFRA rights, an injunction [is] in the public interest." *Sebelius*, 723 F.3d at 1147. Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* Accordingly, the Court issues this TRO, acknowledging that it is in the public's interest to do so.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Pueblo of Santa Clara and Pueblo of Zia's Motion for a Temporary Restraining Order **(Doc. 2)** is **GRANTED**. The National Park Service is ordered not to issue the special use permit to Jemez Pueblo for thirteen (13) days, until **October 10, 2026**. The Court will accept briefing and hold hearing to determine whether to issue a preliminary

injunction prior to the expiration of the Temporary Restraining Order. The Court will set argument for **October 9, 2026,** at **10:00am**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE